1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JONATHAN DEWAYNE SMITH,                    No.  2:21-cv-02345-CKD (HC)

12                  Petitioner,

13           v.                                  ORDER

14    GENA JONES,[1]

15                  Respondent.

16

17    I.  Introduction

18          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19    habeas corpus pursuant to 28 U.S.C. § 2254.  The parties have consented to this Court's

20    jurisdiction pursuant to 28 U.S.C. § 636(c) and Local Rule 302.

21          Petitioner challenges his 2018 conviction for rape of an unconscious person and two

22    counts of residential burglary.  Petitioner was sentenced to 21 years and eight months in state

23    prison.  Petitioner claims that the trial court violated his right to due process by (1) instructing the

24    jury to consider "certainty" of the eyewitness identification testimony and (2) admitting irrelevant

25    and unduly prejudicial evidence.  After careful review of the record, this Court denies his petition

26    for habeas relief.

27    _____

28    [1] Gena Jones, acting Warden at California Health Care Facility, is hereby substituted as the
      respondent in this action pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases.

                                          1

1   II.  Procedural History

2          A jury convicted petitioner of one count of raping an unconscious person and two counts

3   of residential burglary.  (ECF No. 16-1 at 234-43.)  The trial court found as true allegations that

4   petitioner had a prior strike conviction, served a prior prison term, and was previously convicted

5   of a serious felony and sentenced him to 21 years and eight months in state prison.  (ECF No. 16-

6   4 at 20-21.)

7          Petitioner appealed his conviction to the California Court of Appeal.  (ECF Nos. 16-8 to

8   16-10.)  The state appellate court agreed that the challenged sentencing enhancement should be

9   stricken, but otherwise affirmed the judgment.  (ECF No. 16-11.)  Petitioner filed a petition for

10  review before the California Supreme Court, and the court denied the petition.  (ECF Nos. 16-12

11  & 16-13.)

12         Petitioner filed the instant habeas petition in December 2021.  (ECF No. 1.)  Respondent

13  filed an answer.  (ECF Nos. 15 & 16.)  Petitioner did not file a traverse.

14  III.  Facts[2]

15         After independently reviewing the record, this Court finds the appellate court's summary

16  accurate and adopts it herein.[3]  In its unpublished memorandum and opinion affirming

17  petitioner's judgment of conviction on appeal, the California Court of Appeal provided the

18  following factual summary:

19                                    **BACKGROUND**

20                                          **I**

21                               ***Factual Background***

22                  The charges relevant to this appeal concern conduct from various
                    dates in 2014 and 2017.
23

24  ────────────────────

25  [2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate
    District in People v. Smith, C089240, 2021 WL 3524084 (Cal. Ct. App. Aug. 11, 2021), which
26  respondent has lodged as ECF No. 16-11.

27  [3] See 28 U.S.C. § 2254(e)(1) (emphasizing that "a determination of a factual issue made by a
    State court shall be presumed to be correct" unless the petitioner rebuts it by clear and convincing
28  evidence).

                                          2

**A.** *Rape of Jane Doe (Count 1)*

In the summer of 2014, Jane Doe went to a party at her friend's house in Chico. Doe and her friends played a few drinking games at the house and then left to meet other friends in downtown Chico, where they met defendant, who went by Ace. After visiting a few house parties downtown, Doe, defendant, and others returned to Doe's friend's house.

In the early morning, as the party wound down, some people left and others—including Doe and defendant—found places to sleep around the house. Doe slept on the floor and defendant sat on a couch beside a woman who had passed out from drinking.

As others began falling asleep, defendant began rubbing the unconscious woman's leg. But another woman, who saw defendant, flashed her cell phone light on him, called him "nasty," and told him to move somewhere else. Defendant responded, "I didn't do anything," and then moved to the floor near Doe.

Shortly after, Doe, who was lying on her stomach, awoke to sharp pain. Her pants had been pulled down and she felt pain inside her vagina caused, she believed, by an erect penis. She rolled over and saw defendant above her. Shocked and scared, Doe screamed, kicked defendant, and ran to the backyard. Defendant pulled up his shorts and said, "Oh, no. She just kicked me in the face. I didn't try to rape her or nothing." He then left the house. Doe's sister afterward took Doe to the hospital.

**B.** *Burglary of Nicole D. (Count 4)*

In August 2017, Nicole D. and a few of her friends were in her living room in Chico when defendant, who introduced himself as Ace, walked in through the front door. Defendant claimed he assisted another woman back to the house the week before, but Nicole did not recognize him and, after becoming uncomfortable with defendant's presence, asked him to leave. Defendant complied. Shortly after, however, Nicole briefly saw defendant peeking in through her living room window.

Later that night, after Nicole had gone to bed, she woke to defendant kissing her neck. Nicole told him to leave and he complied. Nicole later called the police.

**C.** *Burglary of Christina M. (Count 7)*

A couple hours after Nicole told defendant to leave her house, another woman in Chico, Christina M., was awoken by her bedroom door opening. Believing it was her roommate's boyfriend, Christina called out, "Matt?" After a man replied, "yes," Christina went back to sleep.

But shortly after, she awoke with defendant on top of her, his legs straddling her hips and his hands touching her "lower area." As defendant tried to kiss her, Christina told him to get off. At first, she

believed defendant was someone she knew. But after she grabbed her cell phone and turned on its light, she saw a man she had never seen before. Scared now, she again asked defendant to get off her and leave. But rather than leave, defendant asked if she wanted to use cocaine and hang out. Christina again asked defendant to leave but he ignored her request. Eventually, after Christina woke up her roommate and repeatedly asked him to leave, defendant finally left the house. Christina and her roommate later woke their house manager, who called the police.

**D.** *Burglary Involving Laptop Theft (Count 3)*

In August 2017, Matthew Suttles, who was sitting on the porch of a friend's house waiting for the friend to return home, heard footsteps along the side of the house and shortly after saw defendant round the corner of the house holding a laptop. Given defendant's location, Suttles believed that defendant must have come from inside the house. After Suttles asked defendant what he was doing, defendant dropped the laptop and walked away. Suttles retrieved the laptop—which he identified as his friend's laptop based on its distinctive stickers—and then noticed an open window along the side of the house.

Suttles, a moment later, remembered defendant's face from an earlier incident involving the theft of his own laptop. A few months before, in April 2017, Suttles had returned to his apartment to find his laptop missing and a cell phone on the floor. He called the police and turned over the cell phone. A few months later, after Suttles claimed the phone, the police returned the phone to Suttles. Suttles afterward learned the number for the phone, entered it into Facebook, and connected the number to defendant's Facebook page.

## II

### *Procedural Background*

In a consolidated information, as relevant here, the prosecution charged defendant with one count of raping an unconscious person (Pen. Code, § 261, subd. (a)(4)—count 1)[] and three counts of burglary (§ 459—counts 3, 4, & 7). For the first burglary count (count 3), the prosecution proceeded on the theory that defendant entered the home in that count to commit a theft; and for the remaining burglary counts (counts 4 & 7), the prosecution proceeded on the theory that defendant entered the two homes in those counts with the intent of raping an unconscious person. (See § 459 [any person who enters a house (and certain other spaces) "with intent to commit grand or petit larceny or any felony is guilty of burglary"].) For all counts other than count 1, the information further alleged that defendant had a prior strike conviction (§§ 667, subds. (b)-(j), 1170.12), had served a prior prison term (§ 667.5, subd. (b)), and had previously been convicted of a serious felony (§ 667, subd. (a)(1)).

Following trial, a jury found defendant guilty on counts 1, 4, and 7, and not guilty on the remaining counts, including count 3. The trial court afterward, following a bench trial, found true the allegations

1    that defendant had a prior strike conviction, had served a prior prison
2    term, and had previously been convicted of a serious felony.

3    The court sentenced defendant to a total of 21 years eight months in
     prison. For count 4 (burglary of Nicole), the court sentenced him to
4    the upper term of six years, doubled based on his prior strike
     conviction, for a total of 12 years. For count 1 (rape of Jane Doe), the
5    court sentenced him to one-third the middle term of six years for a
     total of two years. And for count 7 (burglary of Christina), the court
6    sentenced him to one-third the middle term of four years, doubled
     based on his prior strike conviction, for a total of two years eight
7    months. Finally, the court sentenced defendant to five additional
     years in prison based on his prior serious felony and one additional
8    year in prison because he had served a prior prison term. The court,
     however, stayed execution of the one-year enhancement.

9    Defendant timely appealed.

10   (ECF No. 16-11 at 2-6.)

11   IV.  Standards for a Writ of Habeas Corpus

12   An application for a writ of habeas corpus by a person in custody under a judgment of a

13   state court can be granted only for violations of the Constitution or laws or treaties of the United

14   States.  28 U.S.C. § 2254(a).  A federal writ of habeas corpus is not available for alleged error in

15   the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010);

16   Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir.

17   2000).

18   28 U.S.C. § 2254(d) sets forth the following limitation on granting federal habeas corpus

19   relief:

20   An application for a writ of habeas corpus on behalf of a person in
     custody pursuant to the judgment of a State court shall not be granted
21   with respect to any claim that was adjudicated on the merits in State
     court proceedings unless the adjudication of the claim –
22
     (1) resulted in a decision that was contrary to, or involved an
23   unreasonable application of, clearly established Federal law, as
     determined by the Supreme Court of the United States; or
24
     (2) resulted in a decision that was based on an unreasonable
25   determination of the facts in light of the evidence presented in the
     State court proceeding.
26

27   The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as

28   the Supreme Court has explained:

5

1

2

3

4

5

6

7

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u> [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

8   <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (internal citations omitted).

9   "A state court's determination that a claim lacks merit precludes federal habeas relief so

10  long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

11  <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652,

12  664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a

13  state prisoner must show that the state court's ruling on the claim being presented in federal court

14  was so lacking in justification that there was an error well understood and comprehended in

15  existing law beyond any possibility for fairminded disagreement."  <u>Id.</u> at 103.

16  The court looks to the last reasoned state court decision as the basis for the state court's

17  judgment.  <u>Stanley v. Cullen</u>, 633 F.3d 852, 859-60 (9th Cir. 2011).  The California Court of

18  Appeal's decision on direct appeal is the last reasoned state court decision with respect to

19  petitioner's claims.  (ECF No. 16-11.)  Petitioner bears the "burden to demonstrate that 'there was

20  no reasonable basis for the state court to deny relief.'"  <u>Walker v. Martel</u>, 709 F.3d 925, 939 (9th

21  Cir. 2013) (quoting <u>Richter</u>, 562 U.S. at 98).

22  V.  <u>Petitioner's Claims</u>

23  A.  <u>Claim One: Jury Instructional Claim</u>

24  First, petitioner claims that the trial court violated his right to due process by telling the

25  jury in CALCRIM No. 315 that it was allowed to consider the witnesses' level of certainty in

26  evaluating eyewitness identification.  (ECF No. 1 at 5.)  He contends that certainty is not an

27  indicator of reliability.  (<u>Id.</u>)  In response, respondent argues that the state court's rejection of

28  /////

6

1   petitioner's instructional error claim was not contrary to or an unreasonable application of federal

2   law.  (ECF No. 15 at 9-11.)

3        On the merits, this Court looks to the last reasoned state court decision in applying the 28

4   U.S.C. § 2254(d) standard.  Wilson v. Sellers, 138 S. Ct. 1188, 1191-92 (2018); see also Ylst v.

5   Nunnemaker, 501 U.S. 797, 803-04 (1991) (establishing the "look through" doctrine in federal

6   habeas cases).  In the last reasoned decision, the state court considered and rejected this claim.

> Defendant next takes issue with the trial court's instructing the jury
> about eyewitness testimony using CALCRIM No. 315.  That
> instruction states: "You have heard eyewitness testimony identifying
> the defendant. As with any other witness, you must decide whether
> an eyewitness gave truthful and accurate testimony." It then instructs
> the jury, when "evaluating identification testimony," to consider
> various questions, including the following question: "How certain
> was the witness when he or she made an identification?" Taking issue
> with this instruction, defendant contends "[e]volving case law and
> scientific research support the rejection of witness certainty as a valid
> factor in evaluating eyewitness identification. The trial court's
> instruction thus authorized [defendant's] conviction based upon
> unreliable evidence [that witness certainty equals accuracy], in
> violation of his federal constitutional right to due process." Although
> we acknowledge that this instruction could mislead jurors, we find
> no violation of defendant's due process rights.
>
> At the time of defendant's trial, California Supreme Court precedent
> "specifically approved" of a similar jury instruction on witness
> certainty. (*People v. Sanchez* (2016) 63 Cal.4th 411, 462.) But since
> then, the court has "acknowledg[ed] that this form of instruction has
> the potential to mislead jurors." (*People v. Lemcke* (2021) 11 Cal.5th
> 644 (*Lemcke*).) The court reasoned that jurors often assume that a
> certain identification is more likely to be accurate, an assumption
> that CALCRIM No. 315 tends to reinforce, even though "[t]here is
> near unanimity in the empirical research that ' " 'under most
> circumstances, witness confidence or certainty is not a good indicator
> of identification accuracy.'" [Citations.]" (*Lemcke,* at pp. 665-666.)
>
> But although, for these reasons, we acknowledge that CALCRIM
> No. 315 has the potential to mislead jurors, we reject defendant's
> contention that this instruction "permitted the jury to base its verdict
> upon unreliable evidence that witness certainty equals accuracy." As
> the court in *Lemcke* explained in rejecting a similar challenge, "the
> instruction does not direct the jury that 'certainty equals accuracy.'
> [Citation.] Nor does the instruction state that the jury must presume
> an identification is accurate if the eyewitness has expressed certainty.
> [Citation.] Instead, the instruction merely lists the witness's level of
> certainty at the time of identification as one of 15 different factors
> that the jury should consider when evaluating the credibility and
> accuracy of eyewitness testimony. The instruction leaves the jury to
> decide whether the witness expressed a credible claim of certainty
> and what weight, if any, should be placed on that certainty in relation

1
2
3
4
5

> to the numerous other factors listed in CALCRIM No. 315."
> (*Lemcke*, *supra*, 11 Cal.5th at p. 657.) As the *Lemcke* court also
> noted, another standard jury instruction, which was offered here,
> further emphasizes the jury's role in evaluating witness credibility
> and deciding the weight of witness testimony, explaining that
> "[p]eople sometimes honestly ... make mistakes about what they
> remember" and that jurors are responsible for "judg[ing] the
> credibility or believability of the witnesses." (See *id.* at p. 659.)

6
7
8
9
10
11

> Considering the jury instructions as a whole, together with
> the *Lemcke* court's construction of CALCRIM No. 315, we reject
> defendant's contention that CALCRIM No. 315 "permitted the jury
> to base its verdict upon unreliable evidence that witness certainty
> equals accuracy." (See *Lemcke*, *supra*, 11 Cal.5th at p. 661.) The
> instruction, as discussed, has its shortcomings. But " ' "not every
> ambiguity, inconsistency, or deficiency in a jury instruction rises to
> the level of a due process violation. The question is ' "whether the
> ailing instruction ... so infected the entire trial that the resulting
> conviction violates due process." ' " ' [Citation.]" (*Id.* at p. 655.)
> Because defendant has not made this showing, we reject his
> argument.

12   (ECF No. 16-11 at 11-13.)

13       To the extent petitioner argues that CALCRIM No. 315 runs afoul with state law, this

14   claim is not cognizable on habeas review. Estelle, 502 U.S. at 71-72.  Federal habeas relief on a

15   jury instruction claim is only available if "'the ailing instruction by itself so infected the entire

16   trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (quoting Cupp v.

17   Naughten, 414 U.S. 141, 147 (1973)); see also Gilmore v. Taylor, 508 U.S. 333, 342 (1993) (In

18   non-capital cases, "we have never said that the possibility of a jury misapplying state law gives

19   rise to federal constitutional error. To the contrary, we have held that instructions that contain

20   errors of state law may not form the basis for federal habeas relief.").  The instruction cannot

21   merely be "undesirable, erroneous, or even 'universally condemned.'" Donnelly v.

22   DeChristoforo, 416 U.S. 637, 643 (1974).  It must violate a constitutional right. Id.  The jury

23   instruction "'may not be judged in artificial isolation,' but must be considered in the context of

24   instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at

25   147).  The Supreme Court has cautioned that there are few infractions that violate fundamental

26   fairness. Id. at 72-73; see, e.g., Sarausad v. Washington, 555 U.S. 179, 191-92 (2009); Middleton

27   v. McNeil, 541 U.S. 433, 437 (2004) (per curiam) ("Nonetheless, not every ambiguity,

28   /////

1   inconsistency, or deficiency in a jury instruction rises to the level of a due process violation");

2   Jones v. United States, 527 U.S. 373, 390-92 (1999); Gilmore, 508 U.S. at 344.

3        After reviewing the record, this Court concludes that the state court was not objectively

4   unreasonable in denying the jury instruction claim.  As the state court noted, in CALCRIM No.

5   315, the trial court instructed that the jury must decide whether an eyewitness gave truthful and

6   accurate testimony and could consider numerous factors, including the certainty of the witness in

7   making the identification.  (ECF No. 16-1 at 207-08; ECF No. 16-11 at 12; see also ECF No. 16-1

8   at 187, 201-03.)  This instruction is not contrary to federal law.  The Supreme Court has identified

9   a witness's level of certainty as a factor to consider in evaluating the likelihood of

10  misidentification.  See Neil v. Biggers, 409 U.S. 188, 199-200 (1972); see also Manson v.

11  Brathwaite, 432 U.S. 98, 114 (1977) (concluding that "liability is the linchpin in determining the

12  admissibility of identification testimony" and identifying certainty as a factor to consider); Perry

13  v. New Hampshire, 565 U.S. 228, 239 n.5 (2012); Sexton v. Beaudreaux, 138 S. Ct. 2555, 2560

14  (2018) (per curiam).  Petitioner has not identified any case law or evidence that the instruction as

15  given was erroneous and infected the entire trial such that the resulting conviction violated due

16  process.  Because the Supreme Court has identified certainty as an essential factor in evaluating

17  misidentification, this Court cannot conclude that CALCRIM No. 315 violates federal due

18  process rights. The state court reasonably determined that petitioner's due process rights were not

19  violated by CALCRIM No. 315.  This Court, therefore, denies habeas relief on petitioner's first

20  claim.

21        B.  Claim Two: Admission of Evidence

22        Second, petitioner asserts that the trial court abused its discretion and committed

23  prejudicial error by allowing the jury to consider a prior uncharged burglary as propensity

24  evidence.  (ECF No. 1 at 5.)  Respondent disagrees, arguing that the admitted evidence does not

25  constitute a violation of clearly established federal law.  (ECF No. 15 at 11-15.)

26        The state court considered his claim and rejected it on the grounds that the trial court did

27  not admit it to show propensity, but rather to show credibility of the witness's identification.

28  /////

Defendant first, for two reasons, contends the trial court abused its discretion in allowing the prosecution to present evidence of an uncharged burglary—that is, a burglary for which there was testimony but that was not charged in this case.

Before turning to his specific contentions, we start with some additional background. Defendant's argument here concerns the testimony of Matthew Suttles. Before Suttles testified, the prosecutor told the court that he would testify about count 3—which, again, involved the theft of the laptop from Suttles's friend's house. But Suttles, the prosecution added, would also testify that he recognized defendant from an earlier incident involving the theft of his own laptop—which relates to the uncharged burglary. A few months before Suttles encountered defendant at the friend's house, Suttles returned to his apartment to find his laptop missing and a cell phone on the floor. He called the police, turned over the cell phone, and, a few months later, the police returned the phone to Suttles. Suttles afterward learned the number for the phone, entered it into Facebook, and then connected the number to defendant's Facebook page—which later allowed him to recognize defendant during the encounter at his friend's house.

Although defendant objected to the testimony concerning the theft of Suttles's laptop, calling it prejudicial and confusing, the trial court ultimately allowed it. It reasoned that the testimony about the uncharged burglary was admissible under Evidence Code section 1101, which allows the introduction of a defendant's uncharged offenses "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident ...) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) In the court's view, the testimony about the uncharged burglary was relevant to show identity, a common scheme, and intent. The court further found it inappropriate to exclude the testimony under Evidence Code section 352, which allows courts to exclude evidence if its probative value is substantially outweighed by the probability that its admission would "(a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Suttles afterward testified as anticipated.

Following Suttles's testimony, in closing arguments, the prosecutor contended the uncharged burglary was relevant to show Suttles's ability to accurately identify defendant. In particular, she argued, Suttles already "knew who [defendant] was," and so was able to identify him during the burglary charged in count 3, "because a few months prior his house ha[d] been broken into, his laptop was stolen, and he found a phone" that had a number associated with defendant's Facebook page. Consistent with the prosecutor's closing arguments, the court's jury instructions also focused on the potential relevance of the uncharged burglary to the issue of identity. The court instructed the jury: "If you decide that the defendant committed the offenses, you may, but are not required to, consider that evidence [concerning the uncharged burglary] for the limited purpose of deciding whether" the "defendant was the person who committed the offenses alleged in this case."

With that background, we turn to defendant's two contentions. First, defendant asserts, the evidence of the uncharged burglary "had no tendency in reason to prove [his] 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident' to commit" the burglary charged in count 3 or any of the other charged offenses. We disagree.

Evidence Code section 1101, subdivision (a) generally bars admission of evidence of a defendant's other acts or offenses to prove the defendant's "conduct on a specified occasion." So, for example, a prosecutor seeking to persuade a jury that a defendant committed theft on one "specified occasion" generally cannot introduce evidence that the defendant was convicted of theft in the past. Evidence section 1101, subdivision (b) however, "provides a limited basis for admission" of this type of evidence. (*People v. Williams* (1988) 44 Cal.3d 883, 904.) As relevant here, it allows the introduction of a defendant's uncharged offenses "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident ...) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).)

In this case, our focus is on the issue of identity. Although, again, the trial court initially found the uncharged burglary relevant to show identity, intent, and a common scheme, the prosecutor ultimately only relied on the uncharged burglary to show identity and the court, similarly, only instructed on the issue of identity. We thus limit our discussion to that topic.

The general standard for evaluating the relevance of other crimes' evidence to show identity—a standard that both parties focus on—is well established. "To be relevant on the issue of identity," courts have long explained, "the uncharged crimes must be highly similar to the charged offenses. [Citation.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 369.) In particular, the charged and uncharged offenses must be so similar that they "display a ' "pattern and characteristics ... so unusual and distinctive as to be like a signature." ' [Citation.]" (*Id.* at p. 370.) The charged and uncharged offenses, in other words, must be similar enough "to support the inference that the same person committed both acts." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403.)

But although both parties look to this standard for evaluating the admission of the uncharged burglary here, we find it a poor fit for our facts. In general, we agree, "the uncharged crimes must be highly similar to the charged offenses" to establish relevance on the issue of identity. (*People v. Kipp*, *supra*, 18 Cal.4th at p. 369.) That is because, in these types of cases, courts are generally considering whether the charged and uncharged offenses disclose a distinctive modus operandi that supports "a strong inference that the defendant committed both crimes. [Citations.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1316.) But the prosecutor's theory of admissibility in this case did not turn on any distinctive modus operandi. The prosecutor did not, for example, allege that the peculiar characteristics of the uncharged burglary tended to show that defendant, and not some other person, committed the burglary

11

1

2

3

charged in count 3. She instead alleged that the facts surrounding the uncharged burglary tended to show that Suttles could accurately identify defendant. In particular, the prosecutor alleged, these facts tended to show that Suttles already "knew who [defendant] was" and so could identify him at the scene of the charged burglary.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

Our facts, in this respect, have little to do with the typical case involving an uncharged act admitted to prove identity. And on our somewhat usual facts—involving a witness who was able to identify a defendant in the act of committing a crime on one occasion because, on a prior occasion, the defendant committed a similar crime against the witness—the test for admissibility is quite different. The California Supreme Court's decision in *People v. Beamon* (1973) 8 Cal.3d 625 (*Beamon*) demonstrates the point. The defendant in that case pulled a gun on the driver of a delivery truck and took his truck. "After the truck had been driven a few blocks [the witness] looked up at the [defendant]. Eighteen months earlier he had suffered a similar highjacking and he now recognized [the] defendant as the person who had been tried for and acquitted of criminal charges filed in connection therewith." (*Id.* at p. 630.) After the defendant was charged for the second truck robbery, the driver testified at trial about both the second robbery and the first robbery that had occurred some 18 months earlier. (*Id.* at p. 632.) On appeal, the defendant contended the trial court wrongly admitted evidence of this prior wrongful conduct. (*Ibid.*) But the California Supreme Court disagreed. The driver's identification of the defendant, the court explained, was "materially buttressed by evidence that the victim was familiar with and able to recognize defendant because of observations made at a time prior to the kidnaping and robbery. Evidence of the circumstances which made it possible for the victim to identify defendant, although it disclosed a prior highjacking, was thus relevant to establish the credibility of the identification." (*Ibid.*)

18

19

20

21

22

23

The court in *People v. Ellers* (1980) 108 Cal.App.3d 943 (*Ellers*) reasoned similarly. An informant in that case, working with the police, purchased heroin from a drug dealer and then identified the defendant as the dealer. (*Id.* at p. 948.) In part to bolster the informant's identification, the informant at trial "testified he had known [the defendant] for about ten years and had purchased heroin from him during those years." (*Id.* at pp. 952-953.) On appeal, the defendant contended the trial court wrongly admitted evidence of these prior heroin sales. But the court disagreed, reasoning in part that "this evidence was probative as to whether the informant indeed knew the identity of the man who sold him the heroin." (*Id.* at p. 953.)

24

25

26

27

28

We find similarly here. The prosecution, again, sought to introduce Suttles's testimony about the uncharged burglary to prove some fact other than his disposition to commit burglaries—namely, to prove that Suttles could ably identify defendant based on his past familiarity with defendant. Considering *Beamon* and *Ellers*, we conclude that the court did not abuse its discretion in agreeing that Suttles's testimony about the uncharged burglary was admissible for this reason. To use the *Beamon* court's language, Suttles's identification of defendant "is materially buttressed by evidence that

12

1
2
3
4

> [Suttles] was familiar with and able to recognize [defendant] because of observations made at a time prior to the [charged burglary]. Evidence of the circumstances which made it possible for [Suttles] to identify [defendant], although it disclosed a prior [burglary], was thus relevant to establish the credibility of the identification." (*Beamon*, *supra*, 8 Cal.3d at p. 632.)

5
6
7

> Defendant next contends that, even if the uncharged burglary had some relevance, "the court nonetheless erred by admitting the evidence because the weak probative value was far outweighed by the powerful prejudice this negative character evidence had on [defendant]." We reject this argument too.

8
9
10
11
12
13
14
15
16

> Again, under Evidence Code section 352, evidence may be excluded if its probative value is substantially outweighed by the probability that its admission would "(a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." We decline, however, to find that the trial court abused its discretion in admitting Suttles's testimony. Suttles's testimony about the uncharged burglary was clearly relevant to establish the credibility of his identification of defendant—a critical issue for count 3. And although this testimony was prejudicial to defendant to an extent—just as is true of all evidence of uncharged offenses—we decline to find that it was unduly prejudicial. The testimony about the uncharged burglary was brief (covering less than 10 pages of the transcript), required no additional witnesses, and concerned a crime no more inflammatory than the burglary charged in count 3. Considering these facts and viewing the evidence in the light most favorable to the trial court's ruling, we find no abuse of discretion.

17   (ECF No. 16-11 at 6-11.)

18          To the extent that petitioner challenges the admissibility of Suttle's testimony regarding

19   the uncharged burglary, habeas relief is unavailable.  State law determines whether evidence is

20   admissible.  See Estelle, 502 U.S. at 67-68; Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir.

21   2009).  And errors of state law do not warrant federal habeas relief.  See Estelle, 502 U.S. at 67-

22   68.  "The admission of evidence does not provide a basis for habeas relief unless it rendered the

23   trial fundamentally unfair in violation of due process."  Johnson v. Sublett, 63 F.3d 926, 930 (9th

24   Cir. 1995).

25          "Under AEDPA,[4] even clearly erroneous admissions of evidence that render a trial

26   fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by

27   'clearly established Federal law,' as laid out by the Supreme Court."  Holley, 568 F.3d at 1101;

28   _____

[4] Antiterrorism and Effective Death Penalty Act.

1  see also Walden v. Shinn, 990 F.3d 1183, 1204 (9th Cir. 2021).  Because the Supreme Court has

2  "not yet made a clear ruling that admission of irrelevant or overly prejudicial evidence constitutes

3  a due process violation sufficient to warrant issuance of the writ," Holley, 568 F.3d at 1101, this

4  Court cannot conclude that the state court's ruling was contrary to, or an unreasonable application

5  of, clearly established federal law.  See generally Wright v. Van Patten, 552 U.S. 120, 126 (2008)

6  (per curiam).  To the extent petitioner contends that the trial court erred in admitting his testimony

7  as propensity evidence, the Supreme Court also has never held that propensity evidence violates

8  due process.  See Estelle, 502 U.S. at 75, n.5; Mejia v. Garcia, 534 F.3d 1036, 1046-47 (9th Cir.

9  2008) ("While allowing an uncharged offense might sound more egregious than allowing an

10  uncounseled conviction, the United States Supreme Court has never established the principle that

11  introduction of evidence of uncharged offenses necessarily must offend due process."); Larson v.

12  Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008); Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th

13  Cir. 2006); see also Jennings v. Runnels, 493 F. App'x 903, 906 (9th Cir. 2012).

14       Further, the state court determined that Suttles's testimony about the uncharged burglary

15  was admissible to prove his ability to identify petitioner, relevant to establish credibility of the

16  identification, and was not unduly prejudicial.  (ECF No. 16-11 at 10-11.)  These conclusions are

17  supported by the record and were not objectively unreasonable.  (ECF No. 16-5 at 178-98.)  This

18  Court finds that the state court's rejection of petitioner's claim was not contrary to, or an

19  unreasonable application of, clearly established federal law and denies habeas relief on this claim.

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

1  VI.  Conclusion

2          Accordingly, IT IS HEREBY ORDERED that:

3              1.  Petitioner's petition for a writ of habeas corpus (ECF No. 1) is denied;

4              2.  The Clerk of Court is directed to close this case.

5              3.  The Court declines to issue the certificate of appealability referenced in 28

6                  U.S.C. § 2253.

7  Dated:  January 24, 2023

8                                            _____
                                            CAROLYN K. DELANEY
9                                            UNITED STATES MAGISTRATE JUDGE

10

11

12  20/smit2345.hab

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28